# Moody, Receiver *v.* Keller, Executrix.

## *Action of Assumpsit.*

1. *Sale of property by debtor; right of creditors to maintain action against a purchaser.*—When a debtor makes a sale of his property in consideration of the purchaser agreeing to pay the former's debts, the creditors for whose benefit such agreement was made, may maintain an action at law or a suit in equity according to the facts of the case against the purchaser; but such a suit can not be maintained by a creditor against a purchaser, where there is an entire failure of evidence tending to show an agreement by the purchaser as part of the consideration of the sale to him to pay the debts of the selling debtor.

2. *Action upon a negotiable note; maintenance of suit against the endorser.*—To maintain a suit against the endorser of a negotiable note, it is necessary to allege and prove demand of notice and dishonor unless some legal excuse for their omission is relied on, in which event the complaint must aver facts constituting such excuse; and in a case where the excuse relied on is that the defendant was an accommodation endorser, but there is no evidence introduced on the trial to show that the note was made for the accommodation of the endorser, the suit can not be maintained, and the defendant is entitled to the general affirmative charge.

APPEAL from the Circuit Court of Colbert.

Tried before Hon. JAMES JACKSON, Special Judge.

This action was brought by the appellant, Frank Moody, as receiver of the Bank of Commerce, against the appellee, Kate A. Keller, as executrix of A. H. Keller, deceased, and was instituted on November 29, 1897. The complaint contained nine counts. In the first count the plaintiff sought to recover the sum of three thousand, three hundred dollars on a contract made by the defendant's testator, Arthur H. Keller, on the 23d day of January, 1891, and the Tuscumbia Contracting Company, a partnership composed of James Keller and William H. Gilliam, wherein the said Keller, in considera-

tion of certain property sold and delivered to him that day, agreed to pay the Bank of Commerce $3,300. It further alleged the payment by A. H. Keller on the 1st of July, 1891, of the interest to that date on the debt of $3,300. The second count in the complaint is for money had and received by defendant's testator on January 23, 1891, for the use of the Bank of Commerce. The third count claims for money had and received by defendant's testator on the 1st day of July, 1891, for the Bank of Commerce. The fourth count of the complaint is on a note executed by the Tuscumbia Contracting Co., a partnership, for $3,300 dated July 1, 1891, payable to A. H. Keller, defendant's testator, four months after date, and endorsed by him to the Bank of Commerce, which note the complaint alleges was executed by the Tuscumbia Contracting Company for the accommodation of defendant's testator. The fifth count in the complaint claims on the same note, and alleges that it has been lost; that it was made for the accommodation of A. H. Kellar. A copy of the note and an affidavit of the loss was attached to and made a part of the complaint. The sixth and seventh counts of the complaint claim the sum of $444.47 due by an account stated. The eighth count in the complaint claims on a stated account the sum of $3,300. The account is alleged to have been stated on the 1st of July, 1891. The ninth count was for attorney's fees provided for in said note. The first count of the complaint was amended, showing the execution of the note on July 1st, 1891, and the endorsement by A. H. Keller to the Bank of Commerce.

Defendant filed a great many pleas. 1st. The statute of frauds to first count of the complaint. 2d and 3d. The statute of limitations of three years to the second and third counts of the complaint. 4th. To the fourth and fifth counts of complaint, that the note sued on was endorsed by defendant's testator and he had no notice of its dishonor; and that the note was not made for the accommodation of said A. H. Keller. 5th. That prior to the execution of the note for $3,300 sued on, the Tuscumbia Contracting Company had borrowed money from the Bank of Commerce, and owed it

three notes, one for $500, one for $1,000, and one for $1,800, which were given for money borrowed at a usurious rate of interest; and the note sued on was given for the amount of said three notes; that the Bank of Commerce was engaged in the banking business and discounted the three notes at a usurious rate of interest, to-wit, one per cent. per month. By the sixth and seventh pleas the defendant set up his answer to the first, second, third and eighth counts of the complaint the facts set forth in plea numbered five. By the eighth plea the defendant pleaded payment. The ninth plea was the plea of the general issue.

Plaintiff demurred to the pleas Nos. 5, 6, 7 and 10 on the grounds that the defendant failed to give the date of the notes which defendant alleges was the consideration for the note here sued on, and which she says was discounted at a usurious rate of interest; and for the further reason it is not shown when the usurious discounts were made. These demurrers were overruled. Thereupon the plaintiffs filed the following replications:

1. "Comes the plaintiff and for replication to the pleas numbered 5, 6, 7, and 10 says that on the 23d day of January, 1891, A. H. Keller purchased from the Tuscumbia Contracting Company goods, wares and merchandise in consideration of which he agreed and undertook to pay the indebtedness of the Tuscumbia Contracting Company to the Bank of Commerce, which was evidenced by the said notes of $2,800 and $500 mentioned in said plea."

2. "Comes the plaintiff and for replication to pleas Nos. 5, 6, 7 and 10 says A. H. Keller was an accommodation endorser on the notes for $500 and $1,000 and $1,800 and $2,800 referred to in said pleas; that on the 23d of January, 1891, the said A. H. Keller, defendant's testator, purchased from the Tuscumbia Contracting Company property in consideration of which he agreed to pay the Bank of Commerce the two notes of $500 and $2,800, which were the only two notes then outstanding and owing by the Tuscumbia Contracting Company to the Bank of Commerce and which were not then due. That the said A. H. Keller received the money or its

equivalent in property from the Tuscumbia Contracting Company on the 23d of January, 1891, with which to pay said indebtedness of $3,300.   That the note for $3,300 dated July 1st, 1891, was given to extend the time in which the said A. H. Keller should pay the money to the Bank of Commerce for the property sold him by the Tuscumbia Contracting Company."

3.  "Comes the plaintiff and for further replication to pleas Nos. 5, 6, 7 and 10, says that on the 23d day of January, 1891, the Tuscumbia Contracting Company sold and delivered to A. H. Keller property to the amount of five thousand, seven hundred and eighty-five and 95-100 dollars in part consideration of which the said A. H. Keller, defendant's testator, agreed to pay the Bank of Commerce three thousand three hundred dollars, the debt here sued for."

The court sustained demurrers to the first and second replications.  The third replication was not demurred to.  Upon issue joined upon the pleadins, the evidence disclosed the following facts: The claim was duly filed against the estate of A. H. Kellar, deceased, in the office of judge of probate, on November 27, 1897.  Kellar died in August, 1896, and the executrix was appointed April 24, 1897.  The original note was found and read in evidence.  It is for $3,300, is dated July 1st, 1891, and payable to A. H. Keller four months after date, is signed by Tuscumbia Contracting Company and endorsed by A. H. Keller.  On the 23d of January, 1891, the Tuscumbia Contracting Company executed to A. H. Keller a bill of sale of certain personal property and notes and accounts in consideration of $5,785.  This bill of sale was read in evidence.  It was then shown by the books of the Bank of Commerce that there was an account due the bank by A. H. Keller of $444.47.

Judge Thomas R. Roulhac was examined as a witness and testified, that he was the attorney for the Bank of Commerce in the suit of the Eureka Brick & Lumber Company against the Tuscumbia Contracting Company, Sheffield Machine Works and Bank of Commerce, in the circuit court of Colbert county; that A. H. Keller was

sworn and testified as a witness in that case at the fall term, 1892, of the circuit court. That the note here sued on was the property of the Bank of Commerce and given to witness to be used on the trial of that case; that the note was afterwards turned over to J. H. Nathan, one of the attorneys in this case, who was witness' law partner in 1892; that A. H. Keller testified in that case and produced on the trial the bill of sale from the Tuscumbia Contracting Company to A. H. Keller, dated January 23, 1891; that it was the same bill of sale introduced in evidence in this case; that Keller testified that he was endorser to the Bank of Commerce for the Tuscumbia Contracting Company on one note for $2,800 and one of $500, which notes were afterwards consolidated into one note for $3,300; that the bill of sale was an absolute sale to him of the property described in it for the consideration of $5,785.95, and was a payment of his account, a note of $1,298.80, and to save him from his endorsement of their notes, and that his liability for the $3,300 was a part of the consideration for the bill of sale; that 10 per cent. is an usual attorney's fee for collecting such notes as sued on in this case when the amount does not exceed $5,000. On cross-examination, the witness stated that the notes and accounts mentioned in the bill of sale were not worth more than $50, and that he did not think the property was worth the debt.

C. H. Abbott testified that he was cashier of the Bank of Commerce up to the time it quit business, that the note sued on was the property of the bank at that time. The note was not paid and not protested. The bank did not think it necessary to protest it. The Tuscumbia Contracting Company had no money in the bank to pay it when it became due, nor since. It owed the bank another large amount on over-drafts. This witness further testified that A. H. Keller was vice-president of the bank at the time; that he did not tell Keller the note was not paid; that the shop account charged to Keller on the books was really the bank's account with itself. The witness stated that the bank did not consider it necessary to protest the note. This statement was excluded on motion of defendant, and plaintiff excepted.

W. P. Chitwood was sworn as a witness and testified to the execution of the bill of sale to A. H. Keller; that it

was prepared by him as attorney for the Tuscumbia Contracting Company and L. B. Cooper as attorney for A. H. Keller.

W. H. Gilliam was then examined as a witness and stated that he was a member of the firm of Tuscumbia Contracting Company. Plaintiff asked him to state if the bill of sale included all of the property of the Tuscumbia Contracting Company. Defendant objected to the witness answering the question, and the court sustained the objection, and plaintiff excepted. On objection by defendant the court refused to allow the witness to state whether the Tuscumbia Contracting Company owned any property other than that described in the bill of sale. Plaintiff excepted to this ruling of the court. The plaintiff then asked the witness to state whether the Tuscumbia Contracting Company owned any property at the time the note for $3,300 became due. The court refused to allow him to answer this question, and plaintiff excepted. The court then refused to allow the plaintiff to show that the Tuscumbia Contracting Company was insolvent on the 23d of January, 1891, and that it had never owned any property since. Plaintiff offered to prove that in October and November, 1891, A. H. Keller had in his possession a part of the material sold him by the Tuscumbia Contracting Company, and mentioned in the bill of sale. The court refused to allow this proof, and plaintiff excepted.

Upon the introduction of all the evidence, the court at the request of the defendant gave the general affirmative charge in her favor, to the giving of which charge the plaintiff duly excepted.

There were verdict and judgment in favor of the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

ISAAC ORME and JAMES T. KIRK, for appellant.—Keller having received the property of the Tuscumbia Contracting Company for which he agreed to pay the debt it owed the Bank of Commerce, the bank could sue on that promise.—*Shotwell v. Gilkey*, 30 Ala. 724. "The re-

ceiving of property by the endorser before or at the time of the maturity of the note as an indemnity, shows he can suffer no damages for a failure to present the note for payment."—Story on Promissory Notes, § 280; *Halman v. Whiting*, 19 Ala. 391.

If before maturity of the note, the endorser takes an assignment of all the maker's property, although inadequate to meet the endorsement, it will amount to a waiver of the right to require the due presentment of the note and notice of dishonor.—Story on Promissory Notes, § 282; *Stephenson v. Primrose*, 8 Port. 155; *Chitton v. Robbins*, 4 Ala. 223; *Cockrill v. Hobson*, 16 Ala. 391. An endorser who is indemnified, or one for whose accommodation the note was drawn, who has received the benefit of it, is not entitled to notice of its non-payment.—*Halman v. Whiting*, 19 Ala. 391. "When a note payable in bank is made for the accommodation of the payee, he is not discharged from liability by the failure of the holder to demand payment of the maker at maturity, and to give notice of the non-payment of the note."—*Morris v. Birmingham Nat. Bank*, 93 Ala. 511.

The theory of this action is that the defendant has received money which *ex œquo et bono* belongs to the plaintiff.—*Hangerford v. Moor*, 65 Ala. 232; 3 Brick. Dig., 51, § 13. When one buys goods agreeing as a part of the consideration to pay debts of the seller, and converts the goods into money, an action on the common counts for money had and received may be maintained against the purchaser by one of the creditors whom he agreed to pay.—*Potts v. First Nat. Bank*, 102 Ala. 286; *Barnett v. Warren*, 82 Ala. 557; *Boyett v. Potter*, 80 Ala. 476.

JOSEPH H. NATHAN, *contra*.—The note sued on, though a negotiable promissory note, was not protested and no notice of its dishonor given to the endorser. This, without more, discharged the endorser.—1 Daniel on Negotiable Instruments, § 669; 2 Daniel on Negotiable Instruments, §§ 1128, 1143.

If it were admitted that, under the facts of this case, appellee's testator had taken security for his endorse-

ment, it seems to us it cannot help appellant. The uncontroverted testimony is that the goods passing to Keller under the bill of sale were not of sufficient value to cover the amount due him personally. The text writers are unanimous in stating the rule to be that the security must be *sufficient* to cover the liability, to relieve the necessity for notice.—3 Kent Com., 113; Story on Notes, § 281; 3 Randolph on Com. Paper, § 1343.

This court has held in several cases that where the endorser has secured himself with ample or sufficient indemnity, demand or notice was waived.—*Stephenson v. Primrose*, 8 Porter, 155; *Chilton v. Price & Robbins*, 4 Ala. 229; *Cockrill's Adm'r. v. Hobson*, 16 Ala. 391.

HARALSON, J.—1. There were demurrers to the pleas and replications, but no judgment appears to have been rendered on these demurrers. The judgment entry simply recites: Demurrers to pleas overruled, and demurrers to replications sustained. The case, then, so far as the record shows, was tried on the plea of the general issue to the complaint, and on issue joined on the replications.

2. Dealing with the case as best we may in the confused condition it is thus presented on the pleadings, it would seem, the real issues were, whether the note sued on,—for the contract declared on in the first is nothing more than the note declared on in the fourth count,—was a note made by the Tuscumbia Contracting Company to A. H. Keller, deceased, the defendant's testator, for the accommodation of said Keller, to enable him to raise money by discounting it at the bank, as is averred in substance in the fourth count; or, whether the note was executed by the said Contracting Company on its own account for the purpose of borrowing money on it at said bank, with said A. H. Keller as an accommodation indorser thereon, as is averred especially in defendant's fifth plea.

In connection with the above issue, the question is presented, if it were true that said Keller was merely an indorser on said note, for the accommodation of said Contracting Company, whether he was not entitled to notice of the dishonor of said note at maturity, the lack

of which is set up in defendant's fourth plea, as a defense to said note.

Again, as a reason why the defendant was not entitled to notice of dishonor, the plaintiff in his second replication admits that said Keller was an accommodation indorser on said note, but says that he "received the money or its equivalent in property from the Tuscumbia Contracting Company on the 23d of January, 1891, with which to pay said indebtedness of $3,300."

3. Coming to treat these issues in the manner they are presented, we observe that the first count in the complaint seeks to recover upon allegations to the effect that the Tuscumbia Contracting Company being indebted to the bank of which plaintiff is receiver, conveyed to defendant's testator, Arthur H. Keller, certain assets, upon the promise of the latter to pay the debt of said bank. The second and third counts are for money had and received.

There is no doubt of the principle that when a debtor makes a sale of his property in consideration of the purchaser's agreement to pay the former's debts, the creditor, for whose benefit such agreement was made, may maintain an action at law, or a suit in equity according to the facts, against the purchaser.—*Dimmick v. Register*, 92 Ala. 458. There is, however, an entire failure of evidence tending to show any such agreement upon the part of defendant's testator, as part of the consideration of the sale to him by the Contracting Company. Nor is there any testimony tending to show that defendant's testator ever held any money to the use and for the benefit of the bank, represented by the plaintiff. These observations apply with equal force to those counts in the complaint seeking to recover upon a stated account.

4. This leads to a consideration of the counts which seek a recovery upon a promissory note executed by the Contracting Company to defendant's testator and indorsed by him. It is alleged that said note was executed for the accommodation of defendant's testator and indorsed by him to the Bank of Commerce; and it is to enforce this liability that plaintiff declares specially on

said note. There is no allegation of any demand made upon the maker or notice of dishonor given the indorser. The allegation, however, that the note was made for the accommodation of the indorser, would dispense with the necessity of an allegation of this nature.—*Morris v. Birmingham Nat. Bank*, 93 Ala. 511. However, we find no evidence in the record, that the note in suit was made for the accommodation of the indorser. But there is evidence tending to show that the Contracting Company conveyed assets to Keller to indemnify or secure him against liability upon said note. It was also attempted to be shown, that such assets constituted the entire property of the maker, and that by such sale it became and was insolvent.

In a suit against an indorser of a negotiable note, it is necessary to allege and prove demand and notice of dishonor, unless some legal excuse for their omission is relied on, in which event the declaration must aver the facts constituting such excuse.—*Mims v. Central Bank*, 2 Ala. 294; *Cockrill v. Hobson*, 16 Ala. 391; *McDougald v. Rutherford*, 30 Ala. 253. In this case the excuse relied upon as alleged is, that the note was made for the accommodation of the indorser. As to this, there was, as above stated, a failure of proof. It is unnecessary, therefore, to discuss as an excuse for failure to make demand and give notice of dishonor, the evidence tending to show that the indorser received indemnity from the maker. There is no allegation in the complaint of the plaintiff to which such testimony could correspond.

5. As to the amount of $444.71 claimed in the sixth and seventh counts as due by said A. H. Keller to said bank by account, it need only be said, that there was no proof to sustain the claim, but the evidence of C. H. Abbott, the cashier of the bank, clearly shows that deceased did not owe that account to the bank.

There is no error in the record of which the plaintiff can complain.

Affirmed.